IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| POLICARPIO SANCHEZ-CRUZ, | )<br>) |
| Petitioner, | ) Civil No. 04-1547-TC<br>) |
| v. | ) FINDINGS AND<br>) RECOMMENDATION |
| GUY HALL, | )<br>) |
| Respondent. | )<br>) |

COFFIN, Magistrate Judge.

Presently before the court is the petition for habeas corpus relief (#2).

## BACKGROUND

Petitioner was convicted by a Multnomah County jury of two counts of first degree rape and six counts of sexual abuse in the first degree, after being charged with the repeated sexual abuse of his live-in girlfriend's 11-year-old daughter. At trial, the state called the victim, the victim's mother, a police officer who had responded to a domestic disturbance call involving petitioner and the

1 - FINDINGS AND RECOMMENDATION

mother, a police officer who had investigated the victim's allegations, a state child protection worker, and the medical director of Child Abuse Response and Evaulation Services ("CARES"), where the victim had been evaluated, as witnesses. For his case-in-chief, petitioner took the stand as his only witness. The defense theory of the case was that the victim had made up the allegations of sexual abuse in order to keep petitioner out of the house she and her mother shared, because he had been physically abusive towards the mother.

Upon his conviction, petitioner was sentenced to a 175 month term of imprisonment. He is presently incarcerated at the Two Rivers Correctional Institution in Umatilla, Oregon.

Petitioner appealed his conviction, but the conviction was affirmed by the Oregon Court of Appeals. State v. Sanchez-Cruz, 177 Or.App.332 (2001). The Oregon Supreme Court denied review. State v. Sanchez-Cruz, 333 Or. 463 (2002). Petitioner filed for post-conviction relief, but the PCR trial court denied relief, the Oregon Court of Appeals affirmed without opinion, Sanchez-Cruz v. Schiedler, 194 Or.App. 49 (2004), and the Oregon Supreme Court denied review. Sanchez-Cruz v. Schiedler, 337 Or. 327 (2004).

Petitioner now seeks federal habeas corpus relief. In his petition, he alleges four grounds for relief:

1. Petitioner's conviction was obtained unconstitutionally for failure of the prosecution to disclose false statements. Petitioner alleges the District Attorney and witnesses gave false information concerning when petitioner lived with the victim and when the victim's mother was away from work.

2. Petitioner's conviction was obtained by action of a Grand Jury and Petit Jury that was unconstitutionally impaneled. Petitioner alleges that none of his jury was Hispanic or spoke Spanish, and his lawyer failed to object to this. Petitioner further alleges that his lawyer did not play a taped phone conversation for the jury and also gave "very poor representation."

2 - FINDINGS AND RECOMMENDATION

3.  Petitioner was denied effective assistance of counsel. Petitioner alleges that trial counsel was ineffective for failing to object to petitioner being sentenced twice for the same crime; failing to object to evidence of prior assault charges; failing to properly investigate petitioner's case; pushing petitioner to plead guilty; and preventing petitioner from bringing in his own witnesses.

4.  The law enforcement officers interviewed defendant without allowing him to contact his consulate. Petitioner alleged he was not allowed to contact his consulate as stipulated under the Vienna Convention on Consular Relations. Petitioner further alleges the officers did not read petitioner his Miranda rights until after an interrogation.

Respondent answers the allegations by arguing that most of the grounds for relief are procedurally defaulted, that the state courts' determinations on any remaining claims are entitled to deference, and that the claims are without merit.

## DISCUSSION

### I.  The claims in grounds one, two, and four, and in most of ground three, are defaulted.

#### A.  Relevant law

A state prisoner must exhaust available state court remedies on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 9 (1992). Exhaustion is required by statute. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement of § 2254, habeas petitioners must 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), as modified by 247 F.3d 904 (9th Cir. 2001) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)).

If a habeas petitioner fails to properly exhaust a claim, it may be procedurally defaulted. A claim is procedurally defaulted "if the petitioner failed to exhaust state remedies and the court to

3 - FINDINGS AND RECOMMENDATION

which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Should any of petitioner's claims here be unexhausted, they would be procedurally defaulted because they cannot now be presented to the state court. See Or.Rev.Stat. § 138.071.

**B.    Analysis in this case**

Petitioner did not "fairly present" to the Oregon Supreme Court any of the claims brought in grounds one, two or four. Similarly, he has not fairly presented most of the specific allegations brought against counsel in grounds two and three. Ineffective assistance of counsel claims are discrete and must be exhausted with specificity. See Carriger v. Lewis, 971 F.2d 329, 333-34 (9th Cir. 1992). Thus, all claims raised here save two discrete ineffective assistance of counsel claims and one due process claim,[1] discussed below, have been procedurally defaulted. Petitioner has not presented any argument to suggest that these grounds were fairly presented, nor has he demonstrated that his convictions resulted from a "fundamental miscarriage of justice" or that any grounds exists to excuse the defaults.[2]

///

///

---

[1] Petitioner, in his briefing, raises an argument regarding a claim that the trial court should not have allowed the testimony of Dr. Bays, the medical director of CARES. This claim is not included in his actual petition, and is only raised in his brief, such that respondent was not on notice that he was raising it. Nevertheless, the court will consider the claim inasmuch as it is exhausted.

[2] Specifically, petitioner's arguments relating to the failure to advise him of his right to contact the Mexican consulate do not demonstrate that a fundamental miscarriage of justice has occurred. The United States Supreme Court has recently come down squarely against petitioner's position, both procedurally and on the merits. See Sanchez-Llamas v. Oregon, ___ U.S. ___, 2006 WL 1749688 (June 28, 2006).

4 - FINDINGS AND RECOMMENDATION

II.  **The state court's decision to deny relief on the exhausted claims in Ground Three is due deference under AEDPA, and should not be disturbed.**

    A.    **Relevant law**

        1.    **Applicable law on AEDPA deference**

Petitioner filed his original petition for habeas corpus relief after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, AEDPA applies to the review of his petition.

The relevant portion of AEDPA amended 28 U.S.C. § 2254 by adding the following:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>     (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

State court determinations need not be deferred to in every case. See Williams v. Taylor, 529 U.S. 362, 389 (2000)("If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."). However,

> AEDPA plainly sought to ensure a level of deference to the determinations of state courts, provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent "retrials" on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so.

5 - FINDINGS AND RECOMMENDATION

Williams, 529 U.S. at 386 (citation omitted).

The Williams court also found different and independent meanings in the "contrary to" and "unreasonable application of" clauses of AEDPA. Under the "contrary to" clause, a federal court may only grant habeas relief if: (1) the state court applied a rule that contradicts the governing law set forth in Supreme Court caselaw; or (2) the case confronting the state court was materially indistinguishable from a Supreme Court decision yet the court nevertheless arrived at a result different from the Supreme Court precedent. Id. at 406. Under the "unreasonable application of" clause, a federal court may only grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13.[3] The evaluation of reasonableness is tested against an objective standard. Id. at 409-10. The Court also noted that:

> [T]he most important point is that an unreasonable application is different from an incorrect application of federal law . . . In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).

### 2. Applicable law on ineffective assistance of counsel claims

Review of a claim of ineffective assistance of counsel involves a two part analysis.

A petitioner alleging ineffective assistance of counsel first must show that counsel "made

---

[3]The Court has also noted that a state-court decision may be an unreasonable application of clearly established federal law if "the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." Remdass v. Angelone, 530 U.S. 156 (2000).

6 - FINDINGS AND RECOMMENDATION

errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight.[4] Id. at 689-90. The reasonableness of counsel's actions "may be determined or substantially influenced by defendant's own statements or actions." Id. at 691.

The second part of the analysis looks at the consequence of any error counsel is found to have made. The error must have been "so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. The petitioner must affirmatively prove the prejudice. Id. at 693. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome . . ., and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. However, a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." Id. The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.

Unless a petitioner shows both error and prejudice, "it cannot be said that a conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 686.

---

[4] "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

7 - FINDINGS AND RECOMMENDATION

Under AEDPA, the court reviews for objective unreasonableness the state court's conclusion as to whether counsel's performance was deficient or resulted in prejudice. Weaver v. Palmateer, No. 04-36009, slip op. 7871, 7884 n.9 (9th Cir. July 17, 2006) (citing Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004)).

### B.    Analysis in this case

Petitioner has exhausted two discrete ineffective assistance claims: (1) that counsel failed to object to evidence of a former assault charge brought against petitioner; and (2) that trial counsel failed to properly investigate because no DNA test was performed on petitioner.

### 1.    Failure to object

The state PCR court made a number of findings relevant to this claim:

8.    Petitioner received adequate assistance of trial counsel.

. . .

14.    The defense theory was that [the victim] made these allegations in an effort to get petitioner out of the home so he would stop abusing her mother. Trial counsel thoroughly covered this issue at petitioner's trial.

15.    Trial counsel cross-examined the victim and her mother as to [the victim's] motive to make false allegations and argues this point in closing argument.

. . .

17.    Trial counsel adequately represented petitioner at trial including making all appropriate objections.

18.    Trial counsel did not object to evidence of petitioner's prior Assault in the Fourth Degree conviction because it was consistent with petitioner's defense.

19.    Trial counsel argued throughout petitioner's trial that the victim's allegations were simply lies designed to keep petitioner from returning to the home and physically abusing her mother.

20.    Petitioner admitted to being violent with the victim's mother.

21.    Petitioner failed to prove how excluding evidence of petitioner's prior Assault in the Fourth Degree conviction would have had an effect on the outcome of petitioner's case.

8 - FINDINGS AND RECOMMENDATION

PCR Court Findings of Fact and Conclusions of Law (#36, Ex. 126) at 3-4.

These findings are not contrary to, nor an unreasonable application of, <u>Strickland</u>. The primary defense strategy was to contradict the victim's allegations by demonstrating that the victim had an ulterior motive to make them - to wit, that the victim was protecting her mother from suffering more abuse. Introduction of evidence that petitioner had a history of prior domestic assault supported that defense, and therefore counsel made a tactical choice to allow that evidence to come in. The state court's conclusion that such was not ineffective assistance was proper.

### 2.     **Failure to obtain medical tests**

Petitioner, in seeking post-conviction relief, claimed ineffective assistance of counsel because counsel did not "[f]ully and adequately investigate and prepare Petitioner's case prior to trial. Petitioner believes a DNA test of his bodily fluids would have proven him innocent of his charges[.]" Amended Petition for Post-Conviction Relief (#36, Ex. 109) at 2. The PCR court made several relevant findings:

> 9.   Trial counsel fully and adequately investigated petitioner's case.
>
> 10.  Petitioner's claim that a DNA test was performed on the victim is inaccurate. There were no DNA samples taken.
>
> 11.  DNA was not an issue in petitioner's case because [the victim's] disclosure was not made contemporaneous to the abuse.
>
> 12.  With no sample from the victim for comparison, a DNA sample from petitioner would not have had any effect on the outcome of petitioner's case.

PCR Court Findings of Fact and Conclusions of Law (#36, Ex. 126) at 3.

For the reasons articulated by the PCR court, no DNA testing was necessary, nor would it have been helpful. However, petitioner alleges that his claim was misconstrued, and that what he

9 - FINDINGS AND RECOMMENDATION

really wanted was a blood test to demonstrate that he suffered from a sexually-transmitted disease, and that if the victim was shown not to have been suffering from such disease he would have been exonerated.

In the first, the court notes that that claim arguably has not been properly exhausted because, as described above, the claim made to the state courts related to DNA testing, which would not disclose the presence of sexually-transmitted diseases. Regardless, however, petitioner has not proven that such evidence would have helped him. Other than his own declaration that "I believe I got some diseases and I can give my diseases to somebody else" (Deposition of Policarpio Sanchez-Cruz (#36, Ex. 112) at 6), there is no evidence that at the time of the assaults petitioner suffered from any such diseases, what such diseases were, that the victim did or did not suffer from the same diseases, how such diseases can be detected, or whether they are transmitted sexually.[5] Similarly, there is no evidence that petitioner made trial counsel aware of any sexually-transmitted diseases he may have carried. On the evidence before the court, there is no basis to conclude that counsel's representation was constitutionally ineffective; rather, as the PCR court found, the evidence shows that trial counsel adequately investigated petitioner's case.

### III. The admission of Dr. Bays' testimony was not constitutional error

Petitioner notes that the Oregon Court of Appeals, in a thorough ruling, considered the validity of the trial court's decision to allow Dr. Bays' testimony regarding children's disclosures of sexual assault and found against him, but argues, in cursory fashion, that the court would have found differently if it had the benefit of the Ninth Circuit's later ruling in Sistrunk v. Armenakis, 292 F.3d

---

[5] See also Weaver v. Palmateer, supra, at 7895 ("In other words, where a petitioner cannot even make an unsubstantiated suggestion as to what the results of further testing would have been, there is no basis on which a reviewing court can find prejudice.").

10 - FINDINGS AND RECOMMENDATION

669 (9th Cir. 2002) in which the Ninth Circuit concluded that in that case Dr. Bays had been (slightly) inaccurate in her testimony.[6] However, as the Ninth Circuit found in that case, the discrepancies in Sistrunk were minor and did not undermine confidence in the conviction. Id. at 675. Regardless, there is no evidence that the Oregon Court of Appeals would have dealt with the issue before it - the admission of Dr. Bays' testimony as acceptable scientific evidence - any differently if it was aware that in a separate case a different court determined that her testimony in that case had been slightly inaccurate. Further, such an issue is a matter of state evidentiary law, and there is no basis for finding that the federal constitution was violated.[7]

## CONCLUSION

Petitioner has procedurally defaulted his first, second and fourth grounds for relief, and much of his third ground for relief, and has not demonstrated cause or prejudice to excuse such default.

---

[6] In Sistrunk, the court noted the following inaccuracies: "Although [Dr. Bays] asserted that the study 'found that 2 percent of the cases were false allegations,' the figure for Phase 1 was actually eight percent. Dr. Bays stated that the false allegations were never made by younger children - 'the younger children always told the truth,' she testified - although, in fact, one report (out of 576) in Phase 1 was made by a pre-teen child, while five (out of 717) in Phase 2 were pre-teen allegations. Dr. Bays' overall assessment of the study was that if a pre-teen child comes forward with the story, 'then it is the truth.' However, there were five pre-teen children from Phase 2 who came forward by themselves with false allegations (the pre-teen accuser from Phase 1 was accompanied by a parent). Thus, although Dr. Bays truthfully stated, based on the study, that 'it is very, very rare that a child lies about sex abuse,' her statement that young children never make false allegations was belied by the evidence - six of the 1,293 allegations studies (.005%) in Phases 1 and 2 were falsely made by pre-teen children." Sistrunk, 292 F.3d at 674-75. However, the Ninth Circuit concluded that these discrepancies did not so undermine confidence in the proof of Sistrunk's guilt that it was probable that no reasonable jury would have convicted him, id. at 675, and the court denied relief.

[7] To the extent that petitioner is asking this court to conclude that confidence in his conviction is undermined by Sistrunk, such a conclusion is unwarranted; as mentioned above, even in Sistrunk, where the court had evidence of inaccuracies - which is lacking here - the court did not so find. There is no evidence that the admission of the evidence violated petitioner's due process rights, nor that resulted in a fundamental miscarriage of justice.

11 - FINDINGS AND RECOMMENDATION

As such, those grounds for relief should be dismissed. Further, deference is owed to the state court's conclusion that the performance of petitioner's trial counsel was not constitutionally inadequate. As such, relief on petitioner's exhausted claims in his third ground for relief should be denied. Finally, there is no basis to conclude that the Ninth Circuit's finding in <u>Sistrunk v. Arminakis</u> is of any bearing to the properly exhausted claims in this case, nor that that finding so undermines confidence in the conviction here as to warrant federal habeas relief. The petition should be dismissed.

DATED this 17T day of July, 2006.

    _____
    Thomas M. Coffin
    United States Magistrate Judge

12 - FINDINGS AND RECOMMENDATION